IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| REBEKAH W.[1], ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. 7:20cv00669 |
| ) | |
| KILOLO KIJAKAZI[2], ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Rebekah W. ("Rebekah") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled prior to January 19, 2017, and therefore ineligible for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act ("Act") prior to that date. 42 U.S.C. §§ 401–433; 42 U.S.C. §§ 1381–1383f. The ALJ found that Rebekah became disabled on January 19, 2017. Rebekah alleges that the Administrative Law Judge ("ALJ") erred by failing to properly assess both her mental impairments and allegations regarding her symptoms prior to January 19, 2017.

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

Summary Judgment (Dkt. 18) and **DENYING** Rebekah's Motion for Summary Judgment (Dkt. 14).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Rebekah failed to demonstrate that she was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

## CLAIM HISTORY

Rebekah filed for SSI and DIB in April 2017, claiming her disability began on June 1, 2014, due to agoraphobia, severe depressive disorder, bipolar disorder, extreme anxiety, plantar fasciitis, knee problems, carpal tunnel syndrome, scoliosis, chronic pain, memory problems, and panic attacks. R. 281, 317. Rebekah's date last insured was June 30, 2016[4]; thus, she must show that her disability began on or before this date and existed for twelve continuous months to receive DIB. R. 16, 317; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Rebekah's application at the initial and reconsideration levels of administrative review. R. 71–89, 90–103,106–24, 125–38. On August 15, 2019, ALJ Malik Cutlar held a hearing to consider Rebekah's claim for DIB and SSI. R. 43–70. Counsel represented Rebekah at the hearing, which included testimony from vocational expert Steven Gumerman. On November 14, 2019, the ALJ entered his decision analyzing Rebekah's claims under the familiar five-step process[5] and issuing a partially favorable decision denying her claim for benefits prior to January 19, 2017. R. 25–38. The ALJ found that Rebekah became disabled on January 19, 2017, and thus was not under a disability at any time through the date last insured in June 2016.[6] R. 17.

---

[4] Rebekah was 28 years old on her date last insured, making her a younger person under the Act, and her age category had not changed since the disability onset date of January 19, 2017. R. 32.

[5] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[6] Of course, regarding Rebekah's SSI claim, she is not eligible for SSI until the date on which she files an application for benefits. 20 C.F.R. § 416.202; see also 20 C.F.R. § 416.501 (stating that a claimant may not be

The ALJ found that Rebekah was insured at the time of the alleged disability onset and that she suffered from the severe impairments of anxiety disorder and depressive disorder. R. 19. Additionally, the ALJ found that her mild abnormalities of mild bilateral carpel tunnel syndrome, status post carpel tunnel release surgeries, mild chondromalacia of the bilateral knees with right knee tendonitis, mild degenerative disc disease of the thoracic spine, and mild degenerative disc disease of the lumbar spine with dextroscoliosis were severe in combination with each other.[7] Id. The ALJ also considered Rebekah's obesity pursuant to SSR 19-2p. The ALJ determined that these impairments, either individually or in combination, did not meet or equal a listed impairment. Id. The ALJ specifically considered listing 1.02A, listing 1.02B, listing 1.04A, listing 1.04C, listing 11.14, and listing 12.04. The ALJ found that regarding her mental impairments, prior to the established onset date of January 19, 2017, Rebekah had moderate limitations in interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself, and mild limitation in understanding, remembering, or applying information. R. 22. Beginning on January 19, 2017, Rebekah's limitations in adapting or managing oneself worsened to a marked limitation, as she had increased difficulty leaving the house alone. R. 22.

The ALJ concluded that Rebekah retained the residual functional capacity ("RFC") to perform a limited range of light work. R. 22. Specifically, Rebekah can lift and carry twenty pounds occasionally and ten pounds frequently and can push and pull as much as she can lift and carry. Id. Rebekah can sit for six hours alternating to standing for ten minutes after every one

---

paid SSI for any time period that precedes the first month following the date on which an application was filed). Rebekah filed for SSI (and DIB) in April 2017 and was found to be disabled as of January 2017 by the ALJ.

[7] The ALJ found that Rebekah's plantar fasciitis was non-severe and that, since the alleged onset date, she had no medically determinable impairment of opioid dependence. R. 19.

4

hour of standing, stand for four hours alternating to sitting for ten minutes after every one hour of standing, and walk for four hours alternating to sitting for ten minutes after every hour of walking. Id. She can frequently operate foot controls and hand controls bilaterally, and handle, finger, or feel items bilaterally. Rebekah can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, crawl, and operate a motor vehicle, but can never climb ladders, ropes, or scaffolds, or be in extreme cold. Regarding her ability to understand, remember, and carry out instructions, Rebekah can follow detailed but uninvolved tasks. Regarding her ability to use judgment, Rebekah can perform simple work-related decisions, and can interact with supervisors occasionally and coworkers and the public rarely (meaning less than occasional but more than never). Rebekah can tolerate only occasional changes in a routine work setting. Id. The ALJ determined that Rebekah had no past relevant work, but that prior to the established disability onset date of January 19, 2017, she could perform jobs that exist in significant numbers in the national economy, such as inspector, mail clerk, and textile checker. R. 33. Beginning on January 19, 2017, however, there are no jobs that Rebekah could perform. Thus, the ALJ determined that while Rebekah was not disabled prior to January 19, 2017, she became disabled on that date. R. 34. Rebekah appealed the ALJ's decision, and the Appeals Council denied her request for review on September 18, 2020. R. 1–3.

## ANALYSIS

Rebekah alleges that the ALJ failed to properly assess both her mental impairments and allegations regarding her symptoms prior to January 19, 2017.

### A. Medical History Overview

1. Medical Treatment

5

During a counseling session with a social worker in July 2014, shortly after her alleged onset date, Rebekah reported feeling anxious and stressed, and having difficulty leaving her house.[8] R. 422. The social worker noted Rebekah was working part time and diagnosed her with depression with anxiety. Id. In May 2015, Rebekah began seeing Joseph W. Iksander, D.O. with complaints of being "anxious all the time." R. 467. At that appointment, she had "ok" mood, appropriate affect and speech, normal thought process, and cognition, and good insight and judgment. R. 470. At a follow-up appointment in June 2015, she reported increased anxiety and isolation with a panic attack at a store, but improved depression, and Dr. Iksander indicated an unchanged mental status exam from the previous appointment. R. 466. In January 2017, Rebecca told Dr. Iksander she was unable to leave her house and he noted a changed mental status exam to "very anxious," and assessed her with agoraphobia. R. 465. In February 2017, Rebekah saw Louis A. Perrott, Ph.D., complaining of "severe agoraphobia" where she "stays in her house and does not leave unless someone is with her." R. 430. Rebekah stated she had dealt with this condition "all of her life" but that it had gotten worse over the last two years. Id. Dr. Perrott diagnosed panic disorder, agoraphobia, and post-traumatic stress disorder, noting that Rebekah had grown up in a dysfunctional family, suffered trauma earlier in life, and recommended outpatient therapy sessions to expand her anxiety management skills and life activities. R. 432.

1. <u>Medical Opinions</u>

In September 2017, J. L. Howlick, M.D. wrote that, while he had been treating Rebekah

---

[8] Rebekah challenges the ALJ's decision regarding the time period prior to January 19, 2017 and focuses primarily on alleged errors related to her mental impairments, and thus, I likewise focus on these issues in this medical overview.

for opioid dependence since January 2013 and is primarily and addiction specialist, "it is obvious that [she] suffers from severe social anxiety and agoraphobia." R. 615. The ALJ notes that this statement is on issues reserved to the Commissioner. R. 25.

State agency psychologists Joseph Leizer, Ph.D. and Leslie Montgomery Ph. D. reviewed the record in December 2017 and April 2018, respectively, and both found no more than moderate limitations in the areas of mental health functioning. Drs. Leizer and Montgomery found insufficient evidence to determine the severity of Rebekah's condition prior to her date last insured of June 20, 2016, including that there were "no exams in 2016." R. 99–100, 134–35. The ALJ found the state agency psychologists persuasive prior to the established disability onset date of January 19, 2017. R. 26.

### B. Mental Impairments under SSR 96-8P

Rebekah argues that the ALJ failed to properly assess her mental impairments as required by SSR 96-8P.[9] See Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996). Specifically, Rebekah argues that the ALJ failed to explain how his "RFC findings address or accommodate [her] moderate limitations in concentrating, persisting, or maintaining pace, interacting with others, and adapting or managing oneself." Pl.'s Br. at 13, Dkt. 15. Rebekah also asserts that the RFC does not address her ability to stay on task. Rebekah contends that her anxiety and agoraphobia would have caused her to be absent from work two days per month prior to January 19, 2017 because contrary to the ALJ's finding that she was first diagnosed with agoraphobia in January 2017, she "has been diagnosed with

---

[9] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

agoraphobia since 2013." Pl.'s Br. at 19, Dkt. 15. The Commissioner counters that the ALJ adequately explained why Rebekah's limitations warranted the RFC findings, and points out that "virtually all of the evidence relating to [her] mental impairments is dated after January 19, 2017." D.'s Br. at 11, Dkt. 19.

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 U.S. Dist. LEXIS 115150, at *24, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 U.S. Dist. LEXIS 132972, at *15-16, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe v. Colvin, 826 F.3d 176, 189, (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

In Shinaberry v. Saul, the Fourth Circuit clarifies that an "ALJ cannot summarily 'account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work,' because 'the ability to perform simple tasks differs from the ability to stay on task.'" Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020)[10] (quoting Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)). However, Mascio

---

[10] Instead, Shinaberry highlights "sister circuits" who conclude that "limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations [in concentration, persistence, or pace]" when the "medical evidence demonstrates that a claimant can engage in simple, routine tasks, or unskilled work, despite [these] limitations." Id. (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)).

does "not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." Id. Indeed, "a categorical rule, applying to every case" is not often appropriate in these circumstances; instead, the inquiry "as is usually true in determining the substantiality of evidence, is case-by-case" taking into account the whole of the administrative record and deferring to the ALJ. Biestek, 139 S. Ct. 1148 (discussing a vocational expert's refusal of a request for underlying data). Likewise, as the Commissioner points out, the regulations have changed since Mascio, "clarifying that a 'moderate' rating means that the individual has a 'fair' ability to sustain concentration, persistence, or pace 'independently, appropriately, effectively' and 'on a sustained basis.'" See C.F.R. pt. 404, subpt. P, app'x 1, § 12.00(F)(2).

The medical evidence supports the ALJ's conclusion that, despite her moderate limitations, Rebekah was capable of performing the basic mental demands of light work prior to January 19, 2017, with the specified accommodations. Further, here the ALJ explained why Rebekah's moderate limitations in interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself, did not translate into a limitation in the RFC beyond being able to follow detailed but uninvolved tasks, perform simple work-related decisions, interact with supervisors occasionally, and coworkers and the public rarely, and tolerate only occasional changes in a routine work setting. The ALJ adequately supported his finding that Rebekah could sustain her tasks over a normal workday and accounted for her moderate impairments in his hypothetical questions to the VE and the RFC finding in his ruling.

Contrary to Rebekah's claim that "plaintiff has been diagnosed with agoraphobia since 2013," the ALJ had a clear understanding of the progression of Rebekah's mental limitations, including agoraphobia, from her alleged onset date in 2014, through her established onset date in

9

January 2017. In explaining his reasoning for her disability onset date of January 2017, the ALJ wrote that though "sparse, the records from 2014 and 2015 are sufficient to establish anxiety and depression as severe impairments since the alleged onset date [in June 2014]." R. 23. However, he noted that in May 2015, Rebekah lived alone, was in a relationship with a boyfriend and had a good relationship with family and friends, was cooperative and friendly, with good insight and judgment, and was even looking to start working again soon. In fact, in July 2014, she reported she was working part time. R. 422. In sum, the ALJ concluded that prior to January 2017, Rebekah appeared able to function. R. 23. However, in January 2017, her anxiety and/or agoraphobia worsened, and "based on increased difficulty leaving her home alone" she would be absent from work two days a month. R. 29. The ALJ acknowledged that, while Rebekah had previously expressed difficulty with leaving her home, in early 2017 her symptoms increased so that she would "rarely venture[] out alone and beg[a]n appearing at her medical appointments with someone (father, mother, or a friend)." R. 30.

  The ALJ also relied on the opinions of the state agency psychologists, finding them persuasive prior to the established onset date in January 2017. R. 26. The state agency psychologists found that the evidence was insufficient to determine whether Rebekah had any mental limitations prior to June 30, 2016, and then found only moderate limitations after that date, including that Rebekah was capable of following 1-2 step instructions, and could perform simple and repetitive tasks, though her anxiety, panic and agoraphobia could limit her ability to maintain regular attendance. However, as discussed above, the ALJ considered Rebekah's ability to maintain attendance in competitive work and determined she could do so prior to her established onset date. The ALJ noted that although Rebekah claimed to have difficulty leaving the house prior to January 2017, she did leave her home "at least to attend appointments" and

10

even drove herself to appointments.[11] R. 25, 751, 777. Here, the ALJ's RFC is supported by substantial evidence, including his explanation related to the state agency psychologists, and the record evidence, including the scarcity of medical evidence and treatment prior to January 2017.

### D. Subjective Allegations

Rebekah argues that the ALJ's assessment of her allegations is not supported by substantial evidence, and that the ALJ did not explain either the extent to which she performed her daily activities, or how her daily activities showed she could work full time.[12] The Commissioner counters that the ALJ properly evaluated Rebekah's subjective allegations for the period prior to January 19, 2017.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims,[13] SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain.[14] Id. at *3, §§ 404.1529(b), 416.929(b). Second, the

---

[11] At her hearing in August 2019, Rebekah testified that she had recently driven by herself to Ohio, approximately a six-hour drive, and that it was the first time she had driven in about a year. R. 50. However, unfortunately, she had a car accident during the trip, which she attributed to anxiety. Id.

[12] In this section, Rebekah again asserts that that the ALJ erred by finding that she was not diagnosed with agoraphobia until January 2017, as the records show she "has been diagnosed with agoraphobia since 2013." Pl.'s Br. at 21, Dkt. 15. However, this argument has already been addressed. Further, as the Commissioner notes, and as the ALJ accurately recounted, though Rebekah complained of "agoraphobia-like symptoms prior to January 2017," she was not definitively diagnosed with agoraphobia until January 2017. D.'s Br. at 17, Dkt. 19.

[13] In March 2016, the Social Security Administration superseded the language of SSR 96-7P when it ruled in SSR 16-3P that "credibility" is not appropriate terminology to be used in determining benefits. See Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Mar. 16, 2016) (effective March 28, 2016).

[14] SSR 16-3p states that a claimant must provide "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce [the] alleged symptoms." Id. Objective medical evidence consists of medical signs ("anatomical,

11

ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

The ALJ's opinion includes a detailed discussion of Rebekah's medical history, including Rebekah's own allegations, and the ALJ adequately supported his findings that her allegations were not entirely consistent with the medical evidence and other evidence in the record. The ALJ acknowledged Rebekah's testimony at the hearing, including that she is agoraphobic and does not feel safe when she leaves the house, and that she lies around all the time because of pain. R. 23. Further, as the Commissioner highlights, the Rebekah fails to specify what activities of daily living the ALJ improperly discussed. Rebekah writes that the ALJ erred by "ignoring plaintiff's testimony and the paperwork completed by plaintiff explaining the limited extent she actually performs the daily activities referenced by the ALJ." Pl.'s Br. at 21, Dkt. 15. However, Rebekah never identifies those daily activities. Rebekah does complain that the ALJ should not have used her part-time work or ability to attend medical appointments prior to January 2017 to support his finding that Rebekah was not disabled prior to this date as these were "limited, intermittent" activities. However, I find that the ALJ properly characterized these activities, and

---

physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by the use of medically acceptable laboratory diagnostic techniques." Id.

did not claim they occurred with any greater frequency than the record supports. This is the ALJ's job, to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996); see also Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence. Accordingly, I conclude that the ALJ supported his analysis of Rebekah's subjective complaints with substantial evidence, and that Rebekah is capable of performing work at the level stated in the ALJ's opinion prior to January 2017, at which point she became disabled.

## **CONCLUSION**

It is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The clerk is directed to transmit the record in this case to Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court

as a waiver of such objection, including the waiver of the right to appeal.

            Entered:  January 5, 2022

            *Robert S. Ballou*

            Robert S. Ballou
            United States Magistrate Judge